**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 21-143-DLB-CJS**

**NET CLICKS, LLC**                                                                             **PLAINTIFF**

**v.**                             <u>**MEMORANDUM OPINION & ORDER**</u>

**LKQ CORPORATION**                                                                   **DEFENDANT**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

## I.     INTRODUCTION

This is a breach of contract action brought in diversity by Net Clicks, LLC against LKQ Corporation ("LKQ Parent"). LKQ Parent has filed a Motion to Dismiss for (1) Lack of Subject Matter Jurisdiction, (2) Lack of Personal Jurisdiction, (3) Improper Venue, (4) Failure to State a Claim, and (5) Failure to Join Necessary Parties. (Doc. # 15 at 1). Although there are multiple grounds for dismissal in this case, LKQ Parent's argument relating to the Court's lack of personal jurisdiction is dispositive.  For the reasons set forth herein, Defendant's Motion to Dismiss (Doc. # 15) is **GRANTED** due to the Court lacking personal jurisdiction over Defendant LKQ Corporation.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Net Clicks, LLC ("Net Clicks") is a Kentucky limited liability company with its principal place of business in Union, Kentucky.  (Doc. # 1 ¶ 1).  Net Clicks is the assignee and successor in interest of SendULeads, LLC (Net Clicks and SendULeads are herein referred to as "SUL").  (*Id.*).  SUL has no offices outside of Kentucky and only has two members, Brian Vest and David Mastin, both of whom are Kentucky residents.  (Doc. #

18 at 3).  SUL provides digital advertising and marketing services to clients in the United States.  (Doc. # 1 ¶ 5).

In 2019, SUL and LKQ executed various contracts for SUL to provide marketing services for a number of "Pick Your Part" locations.  (Doc. # 1 ¶ 8).  The "Pick Your Part" locations at issue are owned by five LKQ subsidiaries: (1) LKQ Pick Your Part Midwest, LLC, (2) LKQ Pick Your Part Central, LLC, (3) LKQ Pick Your Part Southeast, LLC, (4) Potomac German Auto, Inc., and (5) Pick-Your-Part Auto Wrecking (all five subsidiaries are herein referred to as the "LKQ Subsidiaries").  (Doc. # 15 at 5). The parties dispute whether SUL signed contracts with LKQ Parent or the LKQ Subsidiaries.  (*Id.*).  According to SUL, LKQ originally requested the marketing services through Cworld Media.  (Doc. # 1 ¶ 6).  Cworld Media then hired SUL for LKQ's marketing requests in 2017. (*Id.* ¶¶ 5-8).  However, two years later, LKQ discontinued using Cworld Media as an intermediary and began negotiating and executing contracts directly with SUL.  (*Id.* ¶ 8).

SUL and LKQ had separate marketing contracts for each LKQ Subsidiary-owned location.  (*Id.* ¶ 10). Throughout their business relationship, LKQ increased the number of locations it wanted marketing services for, increasing the number of marketing contracts to thirty-nine.  (*Id.* ¶ 14).  The marketing contracts had an "initial term" of twelve months and were subject to automatic renewal unless terminated with thirty days written notice to SUL.  (*Id.* ¶ 16).  These contracts listed the "client" as "LKQ Pick Your Part [location]" (for example, "LKQ Pick Your Part Dayton").  (*Id.* ¶ 21).  The detailed terms of these marketing contracts varied depending on LKQ's marketing requests for the specific LKQ Subsidiary-owned location.  (*Id.* ¶ 9).  Todd Chesebro, a former LKQ Parent Marketing Director for the LKQ Subsidiaries, working from Tampa, Florida, signed all

marketing contracts. (Doc. # 15 at 6). After forming the contracts, Todd Chesebro frequently altered the marketing contracts through phone calls or writing. (Doc. # 1 ¶ 9).

However, in April 2020, Todd Chesebro called SUL requesting a "pause" on all marketing services for LKQ Subsidiary locations "until further notice" due to the uncertainty of the market from Covid-19.  (*Id.* ¶ 25).  LKQ followed up with an email stating the requested "pause" was "a corporate mandate."  (*Id.* ¶ 26).  According to SUL, LKQ advised SUL that this "paused" time would be added to any time remaining on the "initial term" of the contracts.  (*Id.* ¶ 27).

LKQ never resumed the requested "pause" because, in December 2020, LKQ called SUL stating that it was providing a thirty-day notice to terminate the marketing contracts after the "initial term" passed.  (*Id.* ¶ 32).  LKQ Parent and its attorney in Illinois then sent a letter to SUL's Kentucky office providing written notice of the termination. (*Id.*).  At this time, fifteen LKQ Subsidiary locations had nine months remaining under their contracts, and fifteen LKQ Subsidiary locations had eleven months remaining under their contracts.  (Docs. # 1 ¶¶ 34, 36, 38 and 1-7 at 2-3).  SUL offered to resume marketing services for the remaining time under each marketing contract, but LKQ rejected the offer. (Doc. # 1 ¶¶ 43, 44).

After this incident, the LKQ Subsidiaries filed an action against SUL in Illinois regarding the thirty marketing contracts—the same subject matter before this Court. (Doc. # 15 at 18-19).  Three weeks after being served with LKQ Subsidiaries' lawsuit, SUL filed this lawsuit in diversity against LKQ Parent seeking damages for anticipatory breach and breach of contract.  (Doc. # 1 ¶¶ 56, 60).  According to SUL, LKQ Parent terminated the thirty marketing contracts before their expiration and refused to resume

the "pause" on the contracts, leaving nine to eleven months remaining on thirty contracts. (*Id.* ¶¶ 51, 59).

LKQ Parent did not file an Answer and, instead, filed a Motion to Dismiss with the Court arguing that dismissal was warranted due to: (1) Lack of Subject Matter Jurisdiction, (2) Lack of Personal Jurisdiction, (3) Improper Venue, (4) Failure to State a Claim, and (5) Failure to Join Necessary Parties.  (Doc. # 15 at 1).  The parties filed responses and replies for each motion, so they are now ripe for review.  (Docs. # 18 and 21).

Although there are multiple grounds for dismissal in this case, the Court first considers the argument relating to lack of personal jurisdiction because it is dispositive.

## III.    ANALYSIS

### A.    Standard of Review

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction over each defendant.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  When a district court relies on written submissions and affidavits rather than an evidentiary hearing, as is the case here, the plaintiff is only required to make a *prima facie* showing that personal jurisdiction exists to survive a motion to dismiss.  *Neogen Corp. v. Neo Gen Screening Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).

The court considers the affidavits, pleadings, and additional evidence in the light most favorable to the plaintiff and does not "consider facts proffered by the defendant that conflict with those offered by the plaintiff."  *Neogen*, 282 F.3d at 887.  Nonetheless, if a

defendant submits "a properly supported motion for dismissal, [then] the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen*, 935 F.2d at 1458.

**B.     Plaintiff SUL has Failed to Plead Sufficient Facts to Establish a Prima Facie Case for Personal Jurisdiction under Kentucky Law**

A federal court sitting in diversity "must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements." *Air Prods. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).  Thus, personal jurisdiction must be proper under the Kentucky long-arm statute and the federal Due Process Clause.  *See id.*  The Kentucky Supreme Court has held that the Kentucky long-arm statute, Ky. Rev. Stat. § 454.210, is narrower in scope than the federal Due Process Clause.  *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011); *Cox v. Koninklijke Philips, N.V.*, 647 Fed. Appx. 625, 628 (6th Cir. 2016).   Therefore, the personal jurisdiction analysis under Kentucky law is a "two-step process."  *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015) (citing *Caesars*, 336 S.W.3d at 57).   "First, a court must look to see if the cause of action arises from the type of conduct or activity that is enumerated in the [Kentucky long-arm] statute itself."  *Id.*  Second, if there is jurisdiction under the long-arm statute, the court must determine whether "exercising personal jurisdiction over the non-resident defendant offends his federal due process rights."  *Caesars*, 336 S.W.3d at 57.

**1.     *Kentucky's Long-Arm Statute***

Kentucky's long-arm statute lists nine enumerated categories of conduct in which a court is authorized to exercise personal jurisdiction.  Ky. Rev. Stat. §454.210(2)(a).  The long-arm statute contains an additional requirement that the claim "arise from" the

enumerated conduct.  Ky. Rev. Stat. § 454.210(2)(b).  In this case, the parties invoke only Ky. Rev. Stat. § 454.210(2)(a)(1) of Kentucky's long-arm statute to establish jurisdiction over LKQ Parent, which provides for personal jurisdiction over a defendant who "transact[s] any business" in Kentucky.  Ky. Rev. Stat. § 454.210(2)(a)(1).

However, LKQ Parent's status as a parent corporation triggers special considerations in the Court's personal jurisdiction analysis.  "In the absence of an alter-ego relationship, personal jurisdiction is proper only if a parent corporation directly—rather than vicariously—maintains contacts and activities within the forum." *Modern Holdings, LLC v. Corning Inc*, Nos. 13-405 and 13-406, 2015 WL 1481443, at *5 (E.D. Ky. Mar. 31, 2015).  Therefore, because SUL has not alleged an alter-ego relationship between LKQ Parent and LKQ Subsidiaries, personal jurisdiction is proper only if LKQ Parent independently maintains sufficient contacts with Kentucky to satisfy the "transacting any business" standard.

### 2.  Defendant LKQ Parent has not "transact[ed] any business" in Kentucky within the Meaning of Section (2)(a)(1)

Ky. Rev. Stat. § 454.210(2)(a)(1) of Kentucky's long-arm statute provides for personal jurisdiction over a defendant who "transact[s] any business" in Kentucky. Kentucky courts have long required "a course of direct, affirmative actions" within Kentucky to solicit or result in a business transaction.  *Modern Holdings, LLC*, 2015 WL 1481443, at *6.  Merely entering into a contract with a Kentucky-based business does not amount to "transacting any business" under the Kentucky long-arm statute.  *See Gentry v. Mead*, No. 16-CV-100, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016) (finding that the defendant entering into a note with a Kentucky resident, on its own, did not amount to transacting business in Kentucky).

Moreover, contacts in connection with a contract do not constitute "transacting any business" when the defendant lacks any other considerable contacts with Kentucky.  For example, in *V-Soft Consulting Group, Inc. v. Logic Corp.*, the court held that the defendants had not transacted business in Kentucky where the defendant contracted with a Kentucky business, engaged in communications with the Kentucky business, and sent payment to the Kentucky business.  No. 3:16-CV-425-DJH, 2017 WL 1228402, at *1 (W.D. Ky. Mar. 31, 2017).  The court reasoned that the only true contact with Kentucky was the contract itself.  *Id.* at *5.  The court also noted that the defendant was not licensed to do business in Kentucky, had no physical presence in Kentucky, and the contract was to be performed outside of Kentucky.  *Id.*  Similarly, in *Envirometric Process Controls, Inc. v. Adman Electric, Inc.*, the court found that the defendant did not transact business in Kentucky, despite "numerous" communications between the parties.  No. 3:12-CV-62-S, 2012 WL 4023789, at *3 (W.D. Ky. Sept. 12, 2012).  The court reasoned that the defendant was not licensed to do business in Kentucky, the defendant had no physical presence in Kentucky, the contract was negotiated over phone and email, and the contract was performed outside of Kentucky.  *Id.* at *2-3; *see also Thompson v. Koko*, No. 3:11-CV-648-H, 2012 WL 374054, at *2 (W.D. Ky. Feb. 3, 2012) (finding that the defendant did not transact business in Kentucky by sending emails and letters, periodic account statements, and a wire transfer confirmation receipt).

Further, courts have also found a lack of "transacting any business" in Kentucky when the contacts concern the activities of the plaintiff rather than those of the defendant. For example, in *Churchill Downs, Inc. v. NLR Entertainment, LLC*, the parties formed a contract for the plaintiff to become the exclusive vendor of an online gambling system.

No. 3:14-CV-166-H, 2014 WL 2200674, at *1 (W.D. Ky. May 27, 2014).  The contract required the plaintiff to perform its obligations in Kentucky.  *Id.* at *6.  Nonetheless, the court held that the defendants did not transact business in Kentucky, in part because it found the plaintiff's actions in Kentucky to fulfill their own contractual obligations irrelevant.  *Id.*  The court reasoned that personal jurisdiction focuses on the activities of the defendant, not the plaintiff.  *Id.*; *see also Dutch Nats. Processing, LLC v. Thornton*, No. 3:20-CV-055-CHB, 2020 WL 9218530, at *5 (W.D. Ky. Sept. 30, 2020) (declining to weigh the plaintiff's contacts in Kentucky in favor of "transacting any business" in Kentucky).

In contrast, courts have found defendants "transacting any business" where there are clear, affirmative efforts by the defendant to result in or solicit business in Kentucky. For instance, in *Caesars Riverboat Casino, LLC v. Beach*, the court found that the defendants transacted business in Kentucky, where the defendants heavily advertised in Kentucky and engaged in "substantial civic and charitable activities."  336 S.W.3d at *58.

In this case, SUL points to several facts tying LKQ Parent to Kentucky.  According to SUL, LKQ Parent (1) requested marketing services from SUL, a Kentucky-based business, (2) signed thirty contracts with SUL, (3) increased the number of marketing contracts, (4) sent payments to Kentucky to fulfill their contract requirements, (5) negotiated contract terms with SUL, (6) communicated through phone conferences with SUL regarding the marketing SUL was providing, (7) communicated with SUL through emails and phone calls, (8) communicated with SUL to alter the marketing contracts, (9) communicated with SUL to "pause" all contracts, (10) sent a letter terminating the marketing contracts before their terms had expired, and (11) contracted with SUL who

performed their obligations under the contract in Kentucky.  (Docs. # 18 at 2, 6-10 and 1 ¶¶ 8, 10, 14, 23, 25, 26, 32, 33).

Again, because SUL has not alleged nor provided sufficient facts under the alter-ego theory between LKQ Parent and LKQ Subsidiaries, the Court may find personal jurisdiction over LKQ Parent only if LKQ Parent has their own contacts with Kentucky to satisfy the "transacting any business" standard.  *See Modern Holdings*, 2015 WL 1481443, at *5.  LKQ Parent, however, asserts that all contacts related to the marketing contracts and their formation should be attributed to LKQ Subsidiaries or the local LKQ Subsidiary-owned locations, not LKQ Parent.  (Doc. # 15 at 5).  LKQ Parent argues that it was not a party to the marketing contracts.  (*Id.*).  This is persuasive because the marketing contracts state they are agreements "between [the Client] located at [Address] and SendULeads."  (Doc. # 1 ¶ 21).  The "Client" does not list "LKQ Corporation" but, instead, lists the LKQ Pick Your Part [location] (for example, "LKQ Pick Your Part Dayton") with their local address.  (*Id.*).  Notably, however, the agreements were signed by Todd Chesebro, a former LKQ Parent employee.  (*Id.*; Doc. # 15 at 5).  At LKQ Parent, he was a Marketing Director for the LKQ Subsidiaries, and his email signature states "LKQ Pick Your Part" (LKQ Subsidiaries) with the LKQ Pick Your Part logo.  (*Id.*).  Nonetheless, because the contracts clearly state that the agreements are between the local LKQ Subsidiary location and SUL, the Court shall not attribute the marketing contracts to LKQ Parent.  This eliminates contacts two and three: signing thirty marketing contracts with a Kentucky-based business and increasing the number of marketing contracts.

It follows then that the communications that occurred through Todd Chesebro should also be attributed to LKQ Subsidiary locations.  (Doc. # 18-1 ¶¶ 11, 16, 20, 24).

However, given that SUL is entitled to have all reasonable inferences made in their favor, the Court will move on to analyze whether these communications satisfy the "transacting any business" standard.  Therefore, viewed in a light most favorable to SUL, LKQ Parent's contacts with Kentucky can be summed up as: (1) negotiations with SUL over phone and email, (2) communicating with SUL to request, alter, pause, and terminate the marketing contracts, (3) sending payments to SUL, and (4) SUL's performance in Kentucky under the contract.

With these contacts, SUL has failed to show that LKQ Parent independently "transacted business" in Kentucky for two reasons.  First, the negotiations with SUL over phone and email, the payments to SUL, and the communications with SUL are insufficient to amount to "transacting any business" because LKQ Parent lacks any other considerable contacts with Kentucky.  Similar to *V-Soft* and *Envirometric Process Controls,* where the courts found "transacting any business" lacking, SUL has failed to allege that LKQ Parent was licensed to do business in Kentucky or had a physical presence in Kentucky.  *V-Soft*, 2017 WL 1228402, at *5; *Envirometric Process Controls*, 2012 WL 4023789, at *3.  Therefore, like *V-Soft* and *Envirometric Process Controls,* LKQ Parent's communications, negotiations over phone and email, and payments to a Kentucky business are insufficient because LKQ Parent lacks any other appreciable

contacts with Kentucky.[1] *See V-Soft*, 2017 WL 1228402, at *5; *Envirometric Process Controls*, 2012 WL 4023789, at *3.

Second, although SUL performed the contract in Kentucky, this argument overlooks that personal jurisdiction focuses on the contacts of the defendant, not the plaintiff. *See Churchill Downs*, 2014 WL 2200674, at *6. A plaintiff cannot "predicate personal jurisdiction on his conduct instead of [the defendant's] contacts with Kentucky." *Thompson*, 2012 WL 374054, at *2 (finding that the defendant did not transact business in Kentucky because the plaintiff based personal jurisdiction on their own conduct rather than the defendant's conduct). Here, similar to *Churchill Downs* and *Thompson*, where the court found a lack of "transacting any business," SUL performed the contract in Kentucky, not LKQ Parent. *See id.*; *Churchill Downs*, 2014 WL 2200674, at *6. The Court cannot establish personal jurisdiction over LKQ Parent based on SUL performing the marketing services in Kentucky because these are the Plaintiff's contacts, not the Defendant's contacts. Therefore, the negotiations with SUL over phone and email, the payments to SUL in Kentucky, the communications with SUL, and SUL's performance in Kentucky are insufficient to amount to "transacting any business."

Accordingly, because LKQ Parent's contacts with Kentucky do not amount to "transacting any business" in Kentucky, the Court need not consider the "arising from"

---

[1]      In *V-Soft*, similar contacts also failed under the due process analysis because they did not satisfy the "purposeful availment" test. *V-Soft*, 2017 WL 1228402, at *9. According to the court, although the defendant had significant communications with plaintiffs in Kentucky and sent payments to Kentucky, these "ties demonstrate nothing more than the fact that [the defendant] was aware that [the plaintiff] was located in Louisville, Kentucky, which the Sixth Circuit has held is insufficient to establish purposeful availment." *Id.* The court also reasoned that the contracts were the defendant's only tie to Kentucky, and the contract was executed in a different state, which indicated that the defendant "did not 'reach out' to [Kentucky] for the purpose of creating 'continuing relationships and obligations' with any citizen of [the] state." *Id.* (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989).

prong of the Kentucky long-arm statute, and it need not consider LKQ Parent's due process rights.  *See Caesars*, 336 S.W.3d at 57.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)    Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 15) is **GRANTED**;

(2)    Plaintiff's Complaint (Doc. # 1) is **DISMISSED without prejudice**;

(3)    A separate Judgment is contemporaneously entered herewith.

This 24th day of August, 2022.

Signed By:

*David L. Bunning*

**United States District Judge**

O:\DATA\ORDERS\Cov2021\21-143 MOO.docx